IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ALEXIS JOSE CANO**,

    Petitioner,

v.

**BRYAN BIRKHOLTZ**,

    Respondent.[1]

Case No. 3:23-cv-1761-JE

**ORDER**

**Michael H. Simon, District Judge.**

United States Magistrate Judge John Jelderks issued Findings and Recommendation in this case on June 13, 2024. Judge Jelderks recommended that this Court dismiss with prejudice Alexis Jose Cano's petition for writ of habeas corpus.

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.

---

[1] At the time that Cano filed his petition, the prison warden at the Federal Correctional Institution in which he was held was Israel Jacquez. FCI Sheridan's current acting warden, Bryan Birkholtz, now is the appropriate defendant.

PAGE 1 – ORDER

§ 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Rule 72(b) of the Federal Rules of Civil Procedure recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Cano timely filed an objection, to which the Government responded. Cano objects to both of Judge Jelderks's reasons for why the Court should dismiss this petition with prejudice.

**A. Exhaustion**

Judge Jelderks found that Cano has not adequately exhausted his administrative remedies such that this case properly may be brought in federal court. Although Cano concedes that he did not exhaust his administrative remedies, he asserts exhaustion should be excused as futile. The Court agrees with Cano. Generally. "[i]n order to seek habeas relief under section 2241 . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." *Singh v. Napolitano*, 649 F.3d 899, 900 (9th Cir. 2011). Exhaustion, however, is not a jurisdictional requirement under 28 U.S.C. § 2241. *See Ward v. Chavez*, 678 F.3d 1042, 1045

PAGE 2 – ORDER

(9th Cir. 2012). Courts have discretion to waive the exhaustion requirement if, among other things, "pursuit of administrative remedies would be a futile gesture." *Laing v. Ashcroft*, 340 F.3d 994, 1000 (9th Cir. 2004) (quotation marks omitted).

Here, Cano's petition explicitly alleges that a Bureau of Prisons ("BOP") regulation, 28 C.F.R. § 523.42, conflicts with Congress's mandate to BOP in the First Step Act ("FSA"). Cano alleges that because BOP followed the parameters of its own regulation—instead of the parameters of the FSA—it miscalculated his First Step Act earned time credits. Because BOP's alleged miscalculation stemmed from an application of its own regulation, requiring Cano to pursue administrative remedies is unlikely to yield a different result. Moreover, depending on the facility's existing staffing and resources, the time required to further pursue administrative appeals could potentially moot Cano's request for relief. Therefore, a waiver of exhaustion is appropriate in this case.

**B.  Merits**

As discussed, Cano bases his petition on a purported discrepancy between the FSA and a BOP implementing regulation. To understand the petition and his objection to Judge Jelderks's Findings and Recommendation, it is helpful to begin with the text of the statute and regulation.

Under the FSA, an adult in custody "who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" according to the statute's guidelines. *See* 18 U.S.C. § 3632(d)(4)(A). The FSA provides that an adult in custody "may not" earn time credits under this provision for any evidence-based recidivism reduction programming that he or she "successfully completed during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii).

PAGE 3 – ORDER

The purported discrepancy comes from the meaning of the word "commences." Section 3585(a) states that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). According to that statute, a sentence begins as early as the date that a defendant is taken into BOP custody, even if the defendant has not yet arrived at the facility where he or she ultimately will serve the sentence. In 2022, BOP promulgated 28 C.F.R. § 523.42, a regulation to implement the FSA time credits provision. Under § 523.42(a), "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served)." According to this regulation, a person's sentence commences on the date that he or she *arrives* at the facility where the sentence will be served. Thus, the statute and the regulation define "commences" differently.

Cano asserted in his petition that BOP should have allowed him to earn and apply FSA time credits from the time he was sentenced and in BOP custody (using the definition of "commences" under § 3585(a)), rather than *only* upon arriving at his designated facility (using the definition of "commences" in the regulation). In support of his position, Cano cites *Huihui v. Derr*, 2023 WL 4086073 (D. Haw. June 20, 2023), which the Court discusses below. In his Findings and Recommendation, Judge Jelderks rejected Cano's argument for two reasons. First, he rejected the District of Hawaii's reading of the statute and regulation in *Huihui*. Second, he discussed the practical considerations that would make Cano's reading unworkable. Cano challenges both conclusions, and the Court addresses each in turn.

The Court begins by acknowledging the tension that Cano raises between the statute and the regulation. By employing the definition of "commences" in § 3585(a), the FSA provides that an adult in custody is not eligible to earn FSA time credit before he or she is within the custody of BOP, awaiting *transportation* to the designated facility. The regulation governing time credits, however, starts the clock for eligibility only after an adult in custody has *arrived* at that facility. Therefore, the regulation does not account for the window of time when an adult is in custody and is being transported to the designated facility. The Court recognizes that § 3632(d)(4)(B) does not *expressly* state that an adult in custody *is* entitled to earn time credits at *any other point* outside of the two exceptions in that provision. The statute only expresses when an adult in custody is *not* entitled to earn credits. Nevertheless, many district courts, both in this Circuit and others, have held that the regulation contravenes the plain text of the statute.[2]

But in this case, whether the regulation conflicts with the statute is not dispositive. Even assuming without deciding that the proper starting date is the day Cano was taken into custody or voluntarily surrendered, he has not established that he is entitled to FSA time credits beginning on that date. That is because the FSA plainly states that adults in custody may earn credits only for "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(a)(i). Cano has not shown that he successfully participated in any such program or activity from the time he was sentenced until he arrived at his designated

---

[2] *See, e.g.*, *Stevens v. Jacquez*, 2024 WL 3200546, at *4 (D. Or. June 25, 2024); *Shemtov v. Birkholz*, 2025 WL 1490543, at *3 (C.D. Cal. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 1489545 (C.D. Cal. May 22, 2025); *Heath v. Knight*, 2024 WL 5198863, at *5 (D.N.J. Dec. 23, 2024); *Jobin v. Warden, FCI-Mendota*, 2024 WL 1367902, at *3 (E.D. Cal. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL 2786898 (E.D. Cal. May 30, 2024); *Patel v. Barron*, 2023 WL 6311281, at *4-5 (W.D. Wash. Sept. 28, 2023); *Huihui v. Derr*, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023); *Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 218 (D.N.H. 2023); *Freeman v. Lillard*, 2025 WL 1358556, at *2 (S.D. Ill. May 9, 2025) (collecting additional cases).

facility. Therefore, even if he were deemed eligible to earn credits during the time between sentencing and arrival, Cano could not have earned any credit during that period under the text of the FSA. *See Stevens v. Jacquez*, 2024 WL 3200546, at *4 (D. Or. June 25, 2024).[3] In the absence of Ninth Circuit direction to the contrary, this conclusion forecloses Cano's habeas petition.

As Judge Jelderks explained, this analysis appears to have been what was overlooked in *Huihui*, Cano's case in support of his position. There, the district court ordered BOP to determine whether the petitioner had already been assessed, deemed "eligible" under the FSA, and had "successfully completed" programing *at any point after* the date of her sentencing. *See* 2023 WL 4086073, at *7. In addition, the *Huihui* court emphasized that that "[t]his is not a situation in which the prisoner has been waiting for a month or two to be transferred. She was waiting over seven months to start earning any credits." *Id.* Courts also have distinguished *Huihui* on this point. *Compare Stevens*, 2024 WL 3200546, at *5 (distinguishing *Huihui* in part because "[Stevens] arrived at FCI Sheridan approximately five weeks after sentencing and was not denied the opportunity to earn FSA time credit for an unreasonable amount of time"), *with Tantuwaya v. Birkholz*, 2024 WL 4805423, at *4 (C.D. Cal. Oct. 10, 2024) (explaining that

---

[3] Many district courts have reached the same conclusion. *See, e.g.*, *Shemtov*, 2025 WL 1490543, at *6; *Barry v. Greene*, 2025 WL 1462571, at *3 (M.D. Pa. May 21, 2025); *De Los Santos-Hernandez v. Rardin*, 2025 WL 1557897, at *3 (D. Minn. Apr. 30, 2025), *report and recommendation adopted*, 2025 WL 1555402 (D. Minn. June 2, 2025); *Smith v. Stover*, 2024 WL 3279014, at *2 (D. Conn. June 20, 2024); *Martinez v. Eischen*, 2024 WL 1598772, at *2 (D. Minn. Apr. 12, 2024); *see also Gale v. Warden FCI Milan*, 2025 WL 223870, at *4 (E.D. Mich. Jan. 16, 2025) (directing BOP to determine whether the petitioner participated in and successfully completed programming from his sentencing date through his arrival date); *Kvashuk v. Warden, FCI Berlin*, 2024 WL 4349850, at *5 (D.N.H. Sept. 30, 2024) (same); *Reyes-Zamudio v. Ricolcol*, 2024 WL 5508234, at *7 (C.D. Cal. Oct. 15, 2024) (declining to examine validity of 28 C.F.R. § 523.42 because the "predicate factual question"—whether the petitioner participated in programming—was unresolved).

PAGE 6 – ORDER

"Petitioner was denied the opportunity to earn [credits] for a six-month period—far longer than the 'reasonable' five-week period in *Stevens*" and citing *Huihui* in support), *and Brenneman v. Salmonson*, 2025 WL 957216, at *6 (E.D. Tex. Feb. 25, 2025) ("If Huihui's seven months is too long, then naturally Petitioner's 13 months is as well."). Cano was sentenced on June 24, 2022, and arrived at his designated facility on September 26, 2022. That is about half the length of the waiting period in *Tantuwaya*, and less than half the periods in *Huihui* and *Brenneman*. The Court finds that although Cano's waiting period exceeds the five-week delay in *Stevens*, it was similarly not unreasonable.

Finally, in the absence of Ninth Circuit direction to the contrary, the Court is persuaded by district court decisions that have recognized the administrability concerns of employing *Huihui's* analysis. As Judge Jelderks explained, the FSA requires BOP to evaluate the risks and needs of each adult in custody before he or she participates in programming. 18 U.S.C. §§ 3631, 3632(a). In response, BOP developed the Prisoner Assessment Tool Targeting Eliminated Risk and Needs ("PATTERN"), which BOP (not a judge at sentencing) employs during the intake process. *See* 18 U.S.C. § 3632(a)(1). The FSA also requires BOP to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs." 18 U.S.C. § 3632(a)(3). BOP must "tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism." 18 U.S.C. § 3632(b)(2). Some courts have suggested ways in which BOP could provide programming opportunities before conducting a PATTERN assessment on an adult in custody. *See, e.g.¸ Brenneman*, 2025 WL 957216, at *6. But the Court agrees with Judge Jelderks's conclusion that it is generally difficult, if not practically impossible, for BOP to

process this information on the same day a court imposes a prison sentence upon a criminal defendant. *See Stevens*, 2024 WL 3200546, at *4 ("As a practical matter, BOP cannot complete a comprehensive risk and needs assessment on the day of sentencing."); *Dunlap v. Warden FMC Devens*, 2024 WL 5285006, at *8 (D. Mass. Dec. 13, 2024) ("But there are practical limitations on assigning and offering [evidence-based recidivism reduction] programming. The FSA cannot be understood to require . . . programming when it is impracticable to do so."). *But see Brenneman*, 2025 WL 957216, at *6 (suggesting ways in which BOP could have addressed such practical concerns).

For the reasons provided, the Court ADOPTS IN PART Judge Jelderks's Findings and Recommendation, ECF 12. The Court DISMISSES with prejudice Cano's petition for writ of habeas corpus, ECF 1, on the merits.

**IT IS SO ORDERED**.

DATED this 1st day of July, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge